IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS MARTIN EROR, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-258 |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | Judge Terrence F. McVerry/ |
| COMMISSIONER OF SOCIAL | ) | Magistrate Judge Maureen P. Kelly |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

**I.  INTRODUCTION**

Plaintiff Dennis Martin Eror, Jr. ("Eror"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f].  The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56.  (ECF Nos. 11, 13).  For the reasons that follow, it is respectfully recommended that the Commissioner's motion for summary judgment (ECF No. 13) be denied, and that Eror's motion for summary judgment (ECF No. 11) be denied to the extent that it requests an award of benefits but granted to the extent that it seeks vacation of the Commissioner's administrative decision, and a remand for further proceedings.  It is also recommended that the Commissioner's decision be vacated, and that the case be remanded for further consideration of Eror's applications for DIB and SSI benefits.

1

## II. PROCEDURAL HISTORY

Eror protectively applied for DIB and SSI benefits on August 25, 2009, alleging that he had become "disabled" on May 1, 2007. (R. at 78, 85, 105). The Pennsylvania Bureau of Disability Determination (the "Bureau") denied the applications on February 19, 2010. (R. at 57, 61). Eror responded on March 11, 2010, by requesting an administrative hearing. (R. at 68-69). On June 24, 2011, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ") Michael F. Colligan. (R. at 26). Eror, who was represented by counsel, appeared and testified at the hearing. (R. at 30-42). Samuel E. Edelmann ("Edelmann"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. (R. at 43-45). In a decision dated August 16, 2011, the ALJ determined that Eror was not "disabled" within the meaning of the Act. (R. at 9-22).

On August 29, 2011, Eror sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 7, 145-148). The Appeals Council denied the request for review on January 9, 2013, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. (R. at 1). Eror commenced this action on February 19, 2013, seeking judicial review of the Commissioner's decision. (ECF Nos. 1, 2). Eror and the Commissioner filed motions for summary judgment on June 20, 2013, and July 29, 2013, respectively. (ECF Nos. 11, 13). Those motions are the subject of this Report and Recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

## III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. Schaudeck v. Commissioner of Social Security Administration, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's

decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health & Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. Stewart v. Secretary of Health, Education & Welfare, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. Weir on Behalf of Weir v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S.Ct. 376 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. McCrea v. Commissioner of Social Security, 370 F.3d 357, 360-361 (3d Cir. 2004).

4

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575 (1947), the United States Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

Id. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. Fargnoli v. Massanari, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, this Court's review is limited to the four corners of the ALJ's decision. Cefalu v. Barnhart, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.   THE DECISION OF THE ALJ

In this case, the ALJ determined that Eror had not engaged in substantial gainful activity since May 1, 2007, the alleged onset date. (R. at 14). Eror was found to be suffering from impairments consisting of: headaches, chronic pain in his neck, back and hips, generalized anxiety disorder, depression, and "opiate dependence in methadone maintenance." (R. at 14). These impairments were deemed to be "severe" under the Commissioner's regulations. (R. at 14); 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Eror did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15-16).

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Eror's "residual functional capacity"[1] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can do no repetitive bending; he needs to change positions from sitting to standing every 10-20 minutes; he needs to work in a low stress work environment; he can perform no more than simple, routine, repetitive tasks; and he can have no more than minimal contact with the public.

(R. at 16). Eror had "past relevant work"[2] experience as a masonry worker. (R. at 20, 110). Edelmann, the impartial vocational expert, classified that position as a "semi-skilled"[3] job at the "very heavy"[4] level of exertion. (R. at 43). Since Eror was deemed to be limited to the performance of "unskilled"[5] work at the "sedentary"[6] level of exertion, it was determined that he could not return to his past relevant work. (R. at 20).

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Hartranft v. Apfel, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[3] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[4] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. §§ 404.1567(e), 416.967(e).

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

Eror was born on October 12, 1981, making him twenty-five years old on his alleged onset date and twenty-nine years old on the date of the ALJ's decision. (R. at 31). He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). Eror had a high school education and an ability to communicate in English. (R. at 31-32, 108, 113); 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Eror could work as an assembly worker, a packer, or a sorter/grader. (R. at 21). Edelmann's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[7] (R. at 44).

## V. DISCUSSION

Eror enrolled in computer-related classes shortly after completing high school. (R. at 31-32). He dropped out of those classes after learning that his fiancé was pregnant with the couple's first child. (R. at 32). The situation forced Eror to get a job. (R. at 32). He started to perform masonry work in order to earn a living. (R. at 33).

At the age of eighteen, Eror lost his balance on a stepladder and fell sixteen feet, landing on his buttocks. (R. at 38). The incident triggered chronic pain in his back and hips and caused him to stop working. (R. at 38). On June 18, 2008, a magnetic resonance imaging ("MRI") scan revealed that Eror was suffering from minimal disc bulging in his lumbar spine. (R. at 215, 259-260). He temporarily worked between November 2008 and January 2009.[8] (R. at 14). Eror was again forced to stop working after falling from a roof and injuring his neck, back and hips. (R. at

---

[7] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." Boone v. Barnhart, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005).
[8] The ALJ concluded that Eror's brief return to work had constituted an "unsuccessful work attempt." (R. at 14); 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1).

7

34). During the intervening months, Eror received counseling services at Progressive Medical Specialists, Inc. (R. at 149).

On February 1, 2010, Victor Jabbour, M.D., performed a consultative physical examination of Eror in connection with his applications for DIB and SSI benefits. (R. at 150-159). After completing the examination, Dr. Jabbour reported that Eror could frequently lift or carry objects weighing up to three pounds and occasionally lift or carry objects weighing up to ten pounds. (R. at 156). Dr. Jabbour indicated that Eror could sit for "less than" six hours, and stand or walk for no more than one hour, during the course of an eight-hour workday. (R. at 156). Eror's pushing and pulling abilities were deemed to be unlimited. (R. at 156). Dr. Jabbour opined that Eror was limited to only occasional postural maneuvers, and that he needed to avoid exposure to heights, moving machinery, vibration, temperature extremes, and humidity. (R. at 157). Grant W. Croyle, Ph.D., a non-examining psychological consultant, opined on February 8, 2010, that Eror did not have a "severe" medical impairment. (R. at 160). He also found that Eror had affective disorders and substance addiction disorders.

On March 22, 2010, Oscar Urrea, M.D., performed a psychiatric evaluation of Eror. (R. at 189-191). Eror complained of panic attacks occurring three to four times per week. (R. at 189). The panic attacks were attributed to "child rearing issues." (R. at 189). Dr. Urrea reported that Eror was "disabled" because of "back and hip injuries." (R. at 189). He also determined that Eror had a "generalized anxiety disorder." (R. at 191). During the spring of 2010, Eror's physical impairments continued to have an adverse effect on his mental health. (R. at 194, 196).

A MRI scan performed on March 3, 2010, showed no changes in Eror's lumbar spine. (R. at 213-214, 221-222, 257-258). On September 12, 2010, an MRI scan of Eror's lumbosacral spine detected the presence of a developmental abnormality. (R. at 256). A separate MRI scan

of Eror's thoracic spine yielded normal results. (R. at 255). The MRI scan performed on October 4, 2010, revealed that Eror had osteophyte complexes on his thoracic spine. (R. at 212, 220, 253).

Eror's primary care physician, Carl E. Scheler, M.D., referred Eror to Ghassan K. Bejjani, M.D. of Greater Pittsburgh Neurosurgical Associates-UPMC, for a neurological examination. (R. at 246). Dr. Bejjani examined Eror on November 3, 2010. (R. at 246-247). Eror complained of recurring pain in his back and hips accompanied by "numbness and tingling." (R. at 246). He was able to ambulate through Dr. Bejjani's office "with a steady gait." (R. at 247). Although Eror experienced some tightness on the right side of his back, the examination was otherwise within normal limits. (R. at 247). Eror was diagnosed as suffering from "degenerative disk disease." (R. at 247). Dr. Bejjani recommended that Eor "consider a job change, aqua therapy, epidural injections of the lumbar spine and pain management." (R. at 247). Eror declined to undergo aqua therapy but generally agreed to follow Dr. Bejjani's other suggestions. (R. at 247). On November 12, 2010, Dr. Scott A. Brancolini administered a thoracic epidural steroid injection to Eror's spine. (R. at 179-180, 204-211).

Eror apparently experienced abdominal, pelvic and testicular pain during the fall of 2010. He underwent a series of tests on December 4, 2010. (R. at 244-245, 248-249). A computed tomography ("CT") scan of Eror's abdomen uncovered no evidence of mass lesions or fluid collections. (R. at 248). A CT scan of his pelvis detected a thickening of the wall of his sigmoid colon and some minimal infiltration of fat into his left lower quadrant. (R. at 248). No evidence of acute appendicitis was found. (R. at 249). An ultrasound of Eror's testicles confirmed that he was not suffering from testicular torsion. (R. at 244-245).

During the first half of 2011, Eror continued to seek regular treatment for his physical and mental impairments. (R. at 200, 202, 216-219, 243).

Alicia Rinaman ("Rinaman"), Eror's fiancé, submitted a written statement to the ALJ in advance of the administrative hearing. (R. at 140-141). In her statement, Rinaman declared that Eror could not sit or stand for long periods of time. (R. at 140).

Eror testified before the ALJ that the "bone spurs" in his back prevented him from lying flat for extended periods of time. (R. at 38-39). He stated that he typically slept in a recliner, since his back injuries precluded him from sleeping in a bed. (R. at 38-39). Eror asserted that the bone spurs would "rub against [his] spine" and make his legs "go numb" whenever he tried to lie flat on his back. (R. at 38-39).

Mary Diane Zelenak ("Zelenak"), an adjudicator working on behalf of the Bureau, determined on February 5, 2010, that Eror was physically capable of engaging in an unrestricted range of "medium"[9] work activities. (R. at 47-53). Zelenak's administrative findings led the Bureau to deny Eror's applications for benefits. (R. at 57, 61). Under the Commissioner's regulations, however, those findings did not constitute "evidence" of Eror's ability to work. 20 C.F.R. §§ 404.1527(e)(1)(i), 416.927(e)(1)(i). Consequently, the only medical opinion pertaining to Eror's residual functional capacity presented to the ALJ was that expressed by Dr. Jabbour. (R. at 150-159).

Under the Commissioner's regulations, work can constitute "substantial gainful activity" even if it is performed on a part-time basis. 20 C.F.R. §§ 404.1572(a), 416.972(a). For this reason, a claimant maintaining a part-time job may be denied benefits at the first step of the sequential evaluation process even if his or her impairments make it impossible for him or her to

---

[9] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

maintain a full-time job. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At the *fifth* step of the process, however, the Commissioner cannot satisfy her burden of production without establishing the existence of jobs that the claimant can perform on a *full-time* basis. Kelley v. Apfel, 185 F.3d 1211, 1213-1215 (11th Cir. 1999); Carlisle v. Barnhart, 392 F.Supp.2d 1287, 1290 (N.D.Ala. 2005); Grove v. Barnhart, 382 F.Supp.2d 1104, 1111 (S.D.Iowa 2005); Moody v. Barnhart, 295 F.Supp.2d 1278, 1283 (N.D.Ala. 2003). The sitting, standing and walking limitations identified by Dr. Jabbour would preclude an individual from completing an eight-hour workday. (R. at 156). Therefore, Dr. Jabbour's examination report would support a finding of disability in this case.

In determining Eror's residual functional capacity, the ALJ purported to give only "limited weight" to Dr. Jabbour's examination report. (R. at 20). The ALJ partially credited Dr. Jabbour's opinion by restricting Eror to jobs permitting him to "change positions from sitting to standing" every ten to twenty minutes. (R. at 16). Eror maintains that the ALJ erred in discounting Dr. Jabbour's findings. (ECF No. 12 at 9-13). The Commissioner contends that the ALJ was permitted to reject Dr. Jabbour's opinion without relying on a contrary medical opinion. (ECF No. 14 at 7-9).

A claimant seeking an award of benefits must present evidence demonstrating his or her *inability* to perform work-related tasks. Bowen v. Yuckert, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)(explaining that the claimant "is in a better position to provide information about his [or her] own medical condition"). When the claimant's inability to engage in a certain work-related activity has not been established, the Commissioner may assume that the claimant is *able* to engage in that activity without seeking confirmation from a medical expert. Chandler v. Commissioner of Social Security, 667 F.3d 356, 362 (3d Cir.

11

2011)(remarking that an administrative law judge may assess a claimant's residual functional capacity without requesting "outside medical expert review of each fact incorporated into the decision"). If a competent medical professional asserts that the claimant is incapable of performing a specific task, that opinion can only be rejected on the basis of "contradictory medical evidence." Brownawell v. Commissioner of Social Security, 554 F.3d 352, 355 (3d Cir. 2008). The opinion of a single physician does not inevitably control the determination as to whether a particular claimant is disabled. Brown v. Astrue, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). The probative force of a medical opinion can only be judged in relation to the evidentiary record as a whole. Miller v. Commissioner of Social Security, 172 F.3d 303, 304 (3d Cir. 1999). When conflicting medical assessments are presented, an administrative law judge is ordinarily "free to choose the medical opinion of one doctor over that of another." Diaz v. Commissioner of Social Security, 577 F.3d 500, 505 (3d Cir. 2009). Nonetheless, the administrative law judge "is not free to employ [his or] her own expertise against that of a physician who presents competent medical evidence." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). The rejection of a medical opinion cannot be based solely on an administrative law judge's "own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

In the case at issue, the ALJ concluded that the "benign clinical findings" of Dr. Jabbour's examination failed to substantiate his view that Eror could not complete an eight-hour workday. (R. at 20). The Commissioner contends that the ALJ was free to "rely on treatment notes and objective evidence, rather than a disability opinion, to support his decision." (ECF No. 14 at 9). The argument advanced by the Commissioner is foreclosed by Ferguson v. Schweiker, 765 F.2d 31 (3d Cir. 1985). In Ferguson, the United States Court of Appeals for the Third

Circuit explained that an administrative law judge may not reject a physician's opinion concerning a claimant's functional limitations "[b]y independently reviewing and interpreting" "objective medical evidence." Ferguson, 765 F.2d at 37. Speaking through Judge Gibbons, the Court of Appeals declared that an administrative law judge must "secure additional evidence from another physician" if he or she believes the existing medical report to be "conclusory or unclear." Id. As the ALJ acknowledged, Dr. Jabbour's report suggested that Eror retained the capacity for only "part-time sedentary work activity." (R. at 20). Since no physician opined that Eror could maintain a full-time job, the ALJ's residual functional capacity assessment is not supported by substantial evidence. Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986).

In an attempt to circumvent the rule announced in Ferguson, the Commissioner relies on Mays v. Barnhart, 78 Fed.Appx. 808 (3d Cir. 2003)(unpublished). (ECF No. 14 at 9). The instant case is clearly distinguishable from Mays. A claimant must be insured for benefits in order to obtain an award under Title II. 42 U.S.C. § 423(a)(1)(A). The expiration of a claimant's insured status does not affect his or her eligibility for SSI benefits under Title XVI. Bowen v. Galbreath, 485 U.S. 74, 76, 108 S.Ct. 892, 99 L.Ed.2d 68 (1988). The claimant in Mays successfully established the existence of a statutory disability beginning on August 1, 1998. Mays, 78 Fed.Appx. at 809, n. 1. Since her insured status under Title II had expired on December 31, 1997, she was only entitled to SSI benefits. Id. The claimant challenged the Commissioner's decision denying her DIB claim. Id. at 809. She argued that the administrative law judge presiding over her case had improperly rejected the conclusions expressed in a medical report dated October 21, 1998, without relying on a countervailing "expert medical opinion." Id. at 813. The Court of Appeals rejected the claimant's argument because the report underpinning her claim had postdated the expiration of her insured status by more than nine months. Id. In

13

Mays, the claimant was attempting to retroactively establish her entitlement to benefits under Title II by relying on "evidence of a later-acquired disability or of the subsequent deterioration of [her] previously non-disabling condition." Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir. 1984). In this case, Eror relies on a medical report that was completed during the relevant period of time.[10] (R. at 150-159). Since the conclusions stated in that report were contemporaneous with the "benign clinical findings" referenced in the ALJ's decision, the ALJ was not free to reject those conclusions without procuring "additional evidence from another physician." Ferguson, 765 F.2d at 37.

Because the ALJ relied solely on his "own credibility judgments, speculation or lay opinion" to reject Dr. Jabbour's examination findings, the Commissioner's decision denying Eror's applications for benefits is not supported by substantial evidence. Morales, 225 F.3d at 317. The applicable statutory provision provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "An immediate award of benefits is appropriate only when the evidentiary record has been fully developed, and when the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." Ambrosini v. Astrue, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). That standard is not satisfied in this case. Dr. Jabbour's examination report is the only assessment of Eror's work-related abilities and limitations contained in the record. Nine months after Dr. Jabbour's consultative examination, Dr. Bejjani recommended that Eror "consider a job change" as well as various treatment and pain management approaches. (R. at

---

[10] When the Appeals Council denied Eror's request for review, the ALJ's decision became the "final decision" of the Commissioner in this case. Sims v. Apfel, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). The relevant period of time began on Eror's alleged onset date of May 1, 2007, and ended with the rendering of the ALJ's decision on August 16, 2011. (R. at 21-22). Eror was insured for Title II benefits through September 30, 2010. (R. at 14, 105). Dr. Jabbour examined Eror on February 1, 2010. (R. at 150-159).

247). Dr. Bejjani offered no opinion as to the extent of Eror's capacity to work. Accordingly, the proper remedy in this case is a remand for further proceedings. Diaz, 577 F.3d at 506.

## VI. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Commissioner's motion for summary judgment (ECF No. 13) be denied, and that Eror's motion for summary judgment (ECF No. 11) be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's "final decision," and a remand for further proceedings. It is further recommended that the Commissioner's decision be vacated, and that the case be remanded for additional consideration of Eror's applications for DIB and SSI benefits. The Commissioner should be directed to "reopen and fully develop the record before rendering a ruling" on Eror's claims. Thomas v. Commissioner of Social Security Administration, 625 F.3d 798, 800 (3d Cir. 2010). In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair his or her ability to challenge this Court's legal conclusions on appeal. Brightwell v. Lehman, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

BY THE COURT:

/s/ Maureen P. Kelly
Maureen P. Kelly
United States Magistrate Judge

Dated: January 8, 2014

cc: The Honorable Terrence F. McVerry
United States District Judge

All counsel of record via CM/ECF